UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CELESTINA ALSTON, | ) | |
| *as next friend of A.E.S.,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CV 1461 CDP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Celestina Alston brings this action under 42 U.S.C. § 405(g) on behalf of her minor child, A.E.S., seeking judicial review of the Commissioner's denial of her application for child's supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

## I. Procedural History

Alston filed her application for child's benefits on April 16, 2013, claiming that A.E.S. became disabled on August 1, 2010. A.E.S. was six years old when

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

Alston applied for benefits. The Social Security Administration denied Alston's application in June 2013. At Alston's request, a hearing was held before an administrative law judge (ALJ) on April 16, 2014, at which Alston and A.E.S. testified. On May 13, 2014, the ALJ denied Alston's claim for benefits, finding A.E.S.'s severe impairments of oppositional defiant disorder (ODD) and attention deficit hyperactivity disorder (ADHD) not to meet or medically equal a listed impairment, nor functionally equal a listed impairment. On September 15, 2015, upon review of additional evidence, the Appeals Council denied Alston's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action seeking judicial review of the Commissioner's final decision, Alston does not claim that the ALJ engaged in any specific error in his determination that A.E.S. is not disabled. Instead, Alston generally argues that A.E.S. should be considered disabled.

## II. Legal Standard

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

1382c(a)(3)(C)(i).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment(s) is severe, the Commissioner must determine whether it meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations. 20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). If the impairment(s) meets or medically equals a Listing, the child is disabled. *Garrett*, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals the listings. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001).

To functionally equal a listed impairment, the child's condition must result in an "extreme" limitation in one domain of functioning or "marked" limitations in

two domains.  20 C.F.R. § 416.926a(a).  The domains are "broad areas of

functioning intended to capture all of what a child can or cannot do."  20 C.F.R. §

416.926a(b)(1).  The six domains used by the Commissioner in making this

determination are:  1) Acquiring and Using Information; 2) Attending and

Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and

Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-

Being.  *Id.*

> A child-claimant has a "marked" limitation in a domain when his
>
> impairment(s) interferes seriously with [his] ability to independently
> initiate, sustain, or complete activities.  [His] day-to-day functioning
> may be seriously limited when [his] impairment(s) limits only one
> activity or when the interactive and cumulative effects of [his]
> impairment(s) limit several activities.  "Marked" limitation also
> means a limitation that is "more than moderate" but "less than
> extreme."

20 C.F.R. § 416.926a(e)(2)(i).  A child has an "extreme" limitation when the

impairment "interferes very seriously with [the child's] ability to independently

initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  In

determining whether a child-claimant's functioning may be marked or extreme, the

Commissioner is to review all the evidence of record and "compare [the child's]

functioning to the typical functioning of children [the child's] age who do not have

impairments."  20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in

determining child-claimant's functioning, Commissioner looks "at how

appropriately, effectively and independently [the child] perform[s] [his] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Young v. Shalala*, 52 F.3d 200 (8th Cir. 1995) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). In evaluating the substantiality of the evidence, I must consider evidence which supports the Commissioner's decision as well as any evidence which fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Where substantial evidence supports the Commissioner's decision, I must affirm, even if a different conclusion may be drawn from the evidence. *Id.*

### III. Evidence Before the ALJ

A.    <u>Testimonial Evidence</u>

At the hearing on April 16, 2014, Alston and A.E.S. testified in response to questions posed by the ALJ. A.E.S. was seven years old and in the second grade at the time of the hearing. He lived with his mother, grandfather, and nine-year-old brother.

Alston testified that A.E.S. suffers from ADHD and takes Adderall for the condition. The problems began when A.E.S. was three or four years old and started preschool, but he was not diagnosed until April 2013, at which time he began taking medication. Alston testified that when he takes his medication as prescribed, A.E.S. tends to sit quietly, attends to tasks with no problem, focuses more, listens, follows directions, and experiences no disturbances. But when he does not take his medication, he becomes hyper and unable to stay on task. A.E.S. currently sees his physician every three months and gets monthly medication refills. (Tr. 37-40, 44.)

A.E.S. is in regular classes at school and was recommended for the gifted program. He does not participate in any after-school academic or tutoring programs. His performance and behavior have improved since he began taking medication, and Alston no longer receives calls or complaints from the school. (Tr. 45-46.) A.E.S. has difficulty with one girl in his class who always wants to fight him. (Tr. 55-56.)

A.E.S. gets up in the morning between 7:00 and 7:30 a.m., although Alston sometimes rouses him at 6:00 a.m. because it may take him a while to get things together before school. A.E.S. then eats and takes his medication. He leaves between 8:00 and 8:10 a.m. to catch the school bus. He gets home from school between 4:00 and 4:10 p.m. at which time he has a snack, does his homework, and

then goes outside to play. It takes him about thirty to forty minutes to do his homework, and he does it accurately. A.E.S. plays football and kickball outside nearly every day with his brother and other children until dinner. After dinner, he takes a bath, plays or watches television for about an hour, and then goes to bed. He goes to bed between 9:00 and 9:30 p.m. (Tr. 47-49, 53-54.)

A.E.S. likes to watch the Disney Channel, Cartoon Network, and Lego movies. He likes to play video games and Legos. He was on a baseball team in Florida before he moved to Missouri. Alston helps him dress and sometimes helps him bathe. A.E.S. can make himself a sandwich or a bowl of cereal and sometimes goes shopping with Alston. He does not have chores to perform. He attends church every Sunday with Alston and goes to Sunday school. (Tr. 49-51, 54.)

B.    Education Records

In September and October 2010, A.E.S. was disciplined for hitting students and not obeying class rules. He was four years old and in pre-kindergarten. (Tr. 186-87.)

During the spring of 2012, A.E.S. was disciplined at school on eight occasions – including five suspensions – for various behavioral issues, including destruction of property, classroom disruption, disrespect, and use of profanity. He was in kindergarten. (Tr. 161-64, 180-85.) During the fall of 2012, A.E.S. was suspended from school eight times for hitting children, destruction of property,

classroom disruption, and not obeying class rules.  He was in first grade.  (Tr. 152-60, 166, 174-79.)  This disruptive behavior continued into January 2013.  (Tr. 151.)

A.E.S.'s first grade report card shows that A.E.S. had difficulty with certain behavioral life skills, such as exhibiting self-control, listening and following directions, cooperating, resolving conflicts, and following rules.  He performed well academically, showing basic or proficient progress in all areas.  (Tr. 142-46.)

On May 24, 2013, A.E.S.'s first grade teacher, Christine Diggs, completed a Teacher Questionnaire for disability determinations.  Ms. Diggs reported that she had been A.E.S.'s teacher since January 2013 and that A.E.S. performed at grade level in reading and math, but below grade level in written language.  In the domain of Acquiring and Using Information, Ms. Diggs reported that A.E.S. had an obvious problem in comprehending and doing math problems, but otherwise had no or only slight problems in the domain.  He had neither serious nor very serious problems in the domain.  In the domain of Attending and Completing Tasks, Ms. Diggs reported that A.E.S. had obvious problems on a daily basis in focusing long enough to complete an assigned task, refocusing to task, waiting to take turns, changing from one activity to another without being disruptive, organization, working without distracting himself or others, and working at a reasonable pace.  In all other respects, Ms. Diggs reported that A.E.S. had no or only slight problems.  A.E.S. had neither serious nor very serious problems in the

domain. In the domain of Interacting and Relating with Others, Ms. Diggs reported that A.E.S. had a serious problem on a daily basis in the area of expressing anger appropriately, explaining that A.E.S. could not deal with anger without becoming violent. Ms. Diggs also reported that A.E.S. had obvious problems in playing cooperatively, seeking attention appropriately, asking permission appropriately, following rules, respecting adults in authority, and taking turns in conversation. In the domain of Moving About and Manipulating Objects, Ms. Diggs reported that A.E.S. had no problems. Finally, in the domain of Caring for Himself, Ms. Diggs reported that A.E.S. had a serious problem on an hourly basis in handling frustration appropriately and responding appropriately to changes in mood. She also reported that A.E.S. had obvious problems in being patient when necessary, identifying and appropriately asserting personal needs, and using appropriate coping skills to meet demands of the school environment. In all other respects, Ms. Diggs reported that A.E.S. had no or slight problems. Ms. Diggs reported A.E.S. to be "much more on task" since he began taking medication regularly. (Tr. 192-99.)

One year later, on April 24, 2014, A.E.S.'s second grade teacher, Wanda Robinson, completed a Teacher Questionnaire for disability determinations. Ms. Robinson reported that A.E.S. exhibited no problems in the domain of Acquiring and Using Information, Interacting and Relating with Others, Moving About and

Manipulating Objects, and Caring for Himself.  In the domain of Attending and Completing Tasks, Ms. Robinson reported that A.E.S. had no problem or only slight problems, explaining that A.E.S. may need instructions repeated or a reminder to remain on task.  Ms. Robinson reported that she did not know whether A.E.S. took medication regularly.  (Tr. 222-29.)

C.      Medical Records

On March 6, 2013, a social worker/therapist at Child Guidance Center diagnosed A.E.S. with disruptive behavior disorder and anxiety disorder based on reports that he did not follow directions, defied authority, and had anger outbursts.  It was believed that A.E.S. engaged in this behavior because of worry and inconsistent structure in his home and school environments.  From April 12 through June 3, 2013, Dr. Anna-Marie Veneracion-Yumul from the Child Guidance Center provided psychiatric treatment to A.E.S. and prescribed Adderall for ODD and ADHD.  (Tr. 246.)

On June 12, 2013, Dr. Robert Cottone, a psychological consultant with disability determinations, completed a Childhood Disability Evaluation wherein he opined that A.E.S. had less than marked limitations in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Himself; and no limitations in the domains of Moving About and Manipulating Objects, and Health and Physical Well-Being.  Dr.

Cottone based this opinion on his review of records from the Child Guidance Center, teacher questionnaires, and the function reported completed by Alston in May 2013. (Tr. 66-67.)

On July 3, 2013, A.E.S. visited Dr. Aurora Denise Zertuche-Sanchez at Health Care for Kids for follow up of his ADHD. A.E.S.'s medical and educational history was reviewed. Alston reported significant improvement in A.E.S.'s behavior since beginning medication, including improved grades, recommendation for the gifted program, and good results at home. Although Alston expressed concern that the medication was wearing off before completion of the school day, she admitted that she sometimes did not give A.E.S. a full dose of medication in the morning. A.E.S. was reported to have residual problems on those days. Dr. Zertuche-Sanchez adjusted A.E.S.'s medication and instructed Alston not to self-titrate the medication. (Tr. 276-78.)

On July 31, Alston reported to Dr. Zertuche-Sanchez that she was still trying to figure out stable times to give A.E.S. his medication but reported that A.E.S.'s behavior had improved at home. She reported that A.E.S. had been suspended from summer camp the previous month because he lashed out at a teacher. She also reported that A.E.S. continued to be jittery and had a decreased appetite with his increased medication, and she expressed concern about A.E.S.'s potential need for lifetime medication. Dr. Zertuche-Sanchez increased A.E.S.'s dosage of

Adderall and advised Alston to seek therapy or counseling for A.E.S. since medication alone was not resolving his problems. (Tr. 273-75.)

During follow up examination on September 4, Dr. Zertuche-Sanchez noted A.E.S. to be doing very well on his current dosage of medication given at consistent times. She also noted that A.E.S.'s teachers reported above average performance, and Alston reported that she had not received any calls or complaints from school. A.E.S. was continued on his current medication and dosage. Alston was instructed to return with A.E.S. in three months for follow up. (Tr. 270-72.)

On November 25, Alston reported to Dr. Ariane E. May at Health and Dental Care for Kids that A.E.S.'s behavior created no problems at school and that he was doing well and was able to focus at school. Alston reported that A.E.S. had behavioral difficulties at home in that he was disorganized, forgetful, frustrated, and had a short attention span. Alston also reported that A.E.S. had difficulty falling asleep. Dr. May determined that A.E.S. was doing well on his current dosage of Adderall and continued him on the current regimen. (Tr. 266-69.)

A.E.S. visited Dr. Christina G. Ingram at Health and Dental Care for Kids on March 12, 2014. Alston reported that A.E.S.'s medication appeared to wear off at the end of the school day, causing him to be restless, unable to concentrate, unable to stay on task, and impulsive at home during the evening. Alston also reported that A.E.S. had a poor self-image and had disregard for his personal safety.

Physical examination was unremarkable.  Dr. Ingram noted A.E.S. to be defiant

during his examination in that he did not follow instructions, stood on the

examination table, walked on the examination table and chairs, and jumped on top

of a step stool.  She noted, however, that he was engaging in age-appropriate

behavior.  Dr. Ingram increased A.E.S.'s morning and afternoon dosages of

Adderall and instructed Alston to return with A.E.S. in one month for follow up.

(Tr. 262-65.)

In a letter dated July 16, 2014, and addressed to "To whom it may concern,"

Dr. May wrote that it was imperative that A.E.S. take his medication at certain

times of the day.  (Tr. 278.)[2]

## IV.  The ALJ's Decision

In his written decision, the ALJ determined that A.E.S. had not engaged in

substantial gainful activity since the date of application, that is, April 16, 2013.  He

further found that A.E.S.'s impairments of ODD and ADHD were severe but that

they did not meet or medically equal the severity of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15.)  The ALJ also found A.E.S.'s

severe impairments not to functionally equal the severity of the listings,

specifically finding that A.E.S. had less than marked limitations in the domains of

---

[2] This letter was submitted to the Appeals Council as additional evidence.  I must consider this additional evidence in determining whether the ALJ's decision is supported by substantial evidence.  *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); *Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir. 1994).

Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Himself; and no limitations in the domains of Moving About and Manipulating Objects, and Health and Physical Well-Being. The ALJ thus found that A.E.S. had not been under a disability since April 16, 2013. (Tr. 19-26.)

## V. Discussion

To be entitled to SSI under Title XVI of the Act, A.E.S. must have been disabled while his application for benefits was pending, that is, between April 16, 2013, and May 13, 2014. *See* 20 C.F.R. §§ 416.330, 416.335.

In his written decision, the ALJ found A.E.S.'s impairments not to meet or medically equal the criteria described in any listed impairment, and particularly Listing 112.11 for ADHD, which, under the Listing, is manifested "by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." For a child-claimant to meet or medically equal this Listing, there must be, at a minimum, "[m]edically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity[.]" 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11(A). The ALJ noted that no treating or examining physician made or even mentioned any findings that would be equivalent to the severity required to meet this criteria. To the extent Dr. Ingram observed "defiant" behavior during A.E.S.'s March 2014

examination, I note that she nevertheless reported this behavior to be appropriate for his age. The ALJ's determination that A.E.S.'s impairments did not meet the criteria for a listed impairment is supported by substantial evidence.

The ALJ then set out the analysis under which the Commissioner is to determine whether a child-claimant is disabled, and, with respect to each domain of functioning, fully and thoughtfully summarized the evidence contained in the record as a whole relating to A.E.S.'s impairments. For the following reasons, the ALJ's conclusions that A.E.S. did not experience marked limitations in any domain is supported by substantial evidence on the record as a whole.

A.      Acquiring and Using Information

In this domain, the ALJ found A.E.S. to have less than marked limitations, noting specifically Alston's testimony that A.E.S. is in regular classes, does not need extra help, and was recommended for gifted classes. The ALJ also noted A.E.S.'s first grade teacher to report that A.E.S. had only slight problems in this domain, with the only exception being in math where A.E.S. was reported to have an "obvious" – but not "serious" – problem. Although the ALJ also noted that A.E.S.'s "first grade report card" reported that his behavior problems overshadowed his skills and interfered with his academic growth (*see* Tr. 20), I note this report to actually be contained in A.E.S.'s kindergarten report card for the 2011-12 school year, which was before A.E.S. began treatment for his

impairments. (*See* 147-50.) Indeed, the record shows that A.E.S. functioned well and had little, if any, difficulty upon receiving treatment and when he regularly took his medication. A.E.S.'s first grade report card for the 2012-13 school year showed A.E.S. to perform well academically, with basic or proficient progress in all areas. And his second grade teacher reported in April 2014 that A.E.S. had no difficulties in acquiring and using information. Impairments that are controllable by medication do not support a finding of disability. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

The ALJ's finding that A.E.S. had less than marked limitations in this domain is supported by substantial evidence on the record as a whole.

B.     Attending and Completing Tasks

The ALJ found A.E.S. to have less than marked limitations in this domain, specifically noting Alston's testimony that A.E.S. completes his homework after school before going outside to play, and her report to A.E.S.'s doctor that his symptoms of frustration and disorganization are relieved with medication. The ALJ also noted A.E.S.'s first grade teacher to report that he had only slight to obvious problems in this domain; and I note that his second grade teacher reported only that he needed instructions repeated or a reminder to remain on task. To the extent the ALJ again mistakenly took A.E.S.'s kindergarten report card as his first grade report card, I note that A.E.S.'s reported difficulties with listening, following

through with directions, and attending to tasks during instruction – as summarized

by the ALJ – occurred well before the pendency of A.E.S.'s application for

benefits and prior to A.E.S. receiving treatment, which successfully controlled the

symptoms of his impairments.  *See Collins,* 335 F.3d at 729.

The ALJ's finding that A.E.S. had less than marked limitations in this

domain is supported by substantial evidence on the record as a whole.

C.      Interacting and Relating with Others

The ALJ found A.E.S. to have less than marked limitations in this domain,

specifically noting that A.E.S. plays with friends every day and has played on

sports teams with other children.  The ALJ also noted that A.E.S. attends Sunday

school every week.  To the extent the record showed A.E.S. to have difficulty with

some girls at school and that his first grade teacher reported anger issues in this

domain, the ALJ noted the record to also show that Alston was not giving A.E.S.

his full dose of medication during that time.[3]  After A.E.S. began receiving his full

dose of medication at consistent times, he no longer experienced reported

behavioral issues at school and, indeed, his second grade teacher reported in April

2014 that A.E.S. had no problems in this domain.  *See Collins*, 335 F.3d at 729.

The ALJ's finding that A.E.S. had less than marked limitations in this

---

[3] To the extent the ALJ also noted that A.E.S. had been suspended from school for behavioral issues, the record shows that these suspensions occurred before Alston filed for benefits and before A.E.S. began receiving any type of treatment for his impairments.

domain is supported by substantial evidence on the record as a whole.

D.     Moving About and Manipulating Objects

The ALJ found A.E.S. to have no limitation in this domain, specifically noting that there was no claim or evidence of record that A.E.S. was limited in any way as defined by Social Security rules.  My review of the record shows A.E.S. to be able to play outdoor sports and to finely manipulate objects such as Legos and video games.  He is able to dress himself with some assistance from his mother, which is not unusual for a six-to-seven-year-old child.  In addition, A.E.S.'s teachers reported that A.E.S. had no problems in this domain.

The ALJ's finding that A.E.S. had no limitations in this domain is supported by substantial evidence on the record as a whole.

E.     Caring for Yourself

The ALJ found A.E.S. to have less than marked limitations his ability to care for himself.  The ALJ specifically noted that A.E.S. dresses, grooms, and bathes himself and that his mother helps him to be sure he performs these tasks properly.  The ALJ also noted A.E.S.'s testimony that he can prepare a sandwich for himself and that he accompanies his mother to the store.  While A.E.S.'s first grade teacher reported in May 2013 that he had a serious problem handling his frustration appropriately and calming himself, his second grade teacher reported less than one year later – after A.E.S. was regularly receiving his full dose of medication – that

he had no problems in this domain. Accordingly, to the extent A.E.S. may have exhibited some difficulty in this domain during the relevant period, the ALJ's finding that his limitations were less than marked is supported by substantial evidence.

F.    Health and Physical Well-Being

The ALJ found A.E.S. to have no limitations in this domain, specifically noting that there was no claim or evidence of record that A.E.S. was limited in any way as defined by Social Security rules. My review of the record shows A.E.S. not to experience any significant adverse physical symptoms from his impairments or treatment that affect his health and well-being or interfere with his physical functioning.

The ALJ's finding that A.E.S. had no limitations in this domain is supported by substantial evidence on the record as a whole.

## VI.  Conclusion

The ALJ considered all of the evidence of record and based his conclusions on the record as a whole. He specifically reviewed and considered the reports and observations of A.E.S.'s doctors, mother, and teachers who could describe his functioning at home and at school. *See* 20 C.F.R. § 416.926a(b)(3). Upon discussing all the evidence of record, the ALJ determined A.E.S.'s impairments not to meet, medically equal, or functionally equal a listed impairment, and thus found

him not disabled under the Regulations. This determination is supported by substantial evidence on the record as a whole, primarily because A.E.S.'s functioning in all areas was appropriate and effective when he regularly took his medication. Because the Commissioner's final decision that A.E.S. is not disabled is supported by substantial evidence on the record as a whole, it is affirmed.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Celestina Alston's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of February, 2017.